UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
TECHSERVE ALLIANCE, F/K/A         )
NATIONAL ASSOCIATION OF           )
COMPUTER CONSULTANT BUSINESS      )
                                  )
                                  )
       Plaintiff,                 )
                                  )
       v.                         )    Civil Action No. 10-0353 (RCL)
                                  )
JANET NAPOLITANO, Secretary,      )
U.S. Department of Homeland Security, )
et al.,                           )
                                  )
       Defendants.                )
_____)
```

**MEMORANDUM OPINION**

I.  **INTRODUCTION**

Plaintiff Techserve Alliance, formerly known as the National Association of Computer Consultant Businesses ("NACCB") submitted a Freedom of Information Act ("FOIA") request to the United States Citizenship and Immigration Services ("USCIS") seeking H-1B visa materials. NACCB—an association of information technology staffing, solutions, and consulting firms—hires the recipients of H-1B visas, which allow temporary non-immigrant alien workers to gain employment in the United States. USCIS responded by reiterating the propriety of its search and subsequent decision to withhold numerous documents. NACCB filed suit against USCIS, challenging the adequacy of its search and response to the FOIA request as well as USCIS's subsequent decision to withhold numerous documents. The case is now before the Court on the parties' cross-motions for summary judgment. Having reviewed the motions,

the oppositions, the replies, the entire record in the case, and the applicable law at length, the Court grants defendants' motion for summary judgment for the reasons that follow.

## II. BACKGROUND

FOIA allows the public to gain access to records from a federal administrative agency, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), and represents a strong Congressional commitment to transparency in government through the disclosure of government information. *Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976). FOIA strikes a balance between "ensur[ing] an informed citizenry, vital to the functioning of a democratic society," and "legitimate governmental and private interests [that] could be harmed by [the] release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992). Though FOIA embodies a policy of disclosure, full disclosure cannot always be achieved, and thus the Act sets forth nine exemptions that allow an agency to withhold all or parts of a document. 5 U.S.C. § 552(b)(1)–(9) (2006).

### A. Factual History

#### 1. Scope of NACCB's FOIA Request

On April 15, 2009, Mark B. Roberts, CEO of NACCB, submitted a FOIA request to USCIS for materials relating to H-1B petitions and related policies. Def.'s Mot. Summ. J. 4, June 24, 2010, ECF No. 16 ("Def.'s Mot."). NACCB's request sought material related to nine categories of documents and did not request expedited processing.[1] United States employers

---

[1] NACCB requested the following categories of documents:
1) Document entitled "H-1B Petitions, Fraud Referral Sheet;"
2) Policies, strategies, or priorities of USCIS with respect to the processing of H-1B nonimmigrant petitions;
3) Revisions, modifications, edits, or other changes in Chapter 31.3 of the USCIS Adjudicator's Field Manual ("AFM") entitled "H-1B Classification and Documentary Requirements" or any predecessor manual;
4) Memorandum from Michael L. Aytes, Assistant Commissioner, INS Office of Adjudications, interpreting the term "itinerary" found in 8 C.F.R. § 214.2(h)(2)(i)(B) as it relates to the H-1B Nonimmigrant classification, HQ 70/6.2.8 (December 29, 1995), and any subsequent revisions, updates or modifications thereof;

2

seeking to hire temporary, highly skilled, non-immigrant alien workers must file and obtain H-1B visas for those potential employees. *Id.* The National Records Center ("NRC"), an office that processes FOIA requests submitted to USCIS, received NACCB's FOIA request on April 21, 2009. USCIS acknowledged receipt of NACCB's FOIA request on April 22, 2009, and assigned control number NRC2009022434 to it.[2] Decl. of Jill Eggleston 4, Ex. 1 to Def.'s Mot. Summ. J., June 24, 2010, ECF No. 16-1 ("Eggleston Decl.").

NRC handles FOIA requests pursuant to a "first-in/first-out system of processing," permitting USCIS to respond to relatively simple requests faster than those requests involving complex or voluminous records. *Id.* at 2. Jill Eggleston, the Assistant Center Director for NRC, explained that a complex FOIA request in 2009 required an average of twelve to eighteen months to process to completion. Supplemental Decl. of Jill Eggleston 2, Ex. 1 to Def.'s Reply Support Mot. Summ. J., Sept. 2, 2010, ECF No. 22 ("Supp. Eggleston"). When NRC received the NACCB's FOIA request, it forwarded the request to its Significant Interest Team. *Id.* The Significant Interest Team subsequently assigned paralegal Cynthia Holt to handle NACCB's FOIA request.[3] *Id.*; Eggleston Decl. 2. Holt determined that three offices—the National

---

5) Interoffice Memorandum, Donald Neufeld, Acting Associate Director, Domestic Operations, *Removal of the Standard Request for Evidence Processing Timeframe Final Rule, 8 C.F.R. § 103.2(b); New Appendix 10-9* (AFM Update AD07-05), HQ 70/11, 70/12, AFM Update AD7-05, June 1, 2007, and any subsequent revisions, updates, or modifications thereof;
    6) Memorandum from the INS Associate Commissioner for Examinations dated November 13, 1995, file HQ 21 4h-c., pertaining to USCIS requirements for H-1B visa petitioners;
    7) Memorandum from William Yates, Associate Director, Operations, USCIS, dated February 16, 2005, entitled *Requests for Evidence (RFE) and Notices of Intent to Deny (NOID)*; and any subsequent revisions, updates, or modifications thereof; and
    8) Communications to and from the Department of Labor ("DOL") concerning the processing of H-1B visa applications or Labor Condition Applications ("LCA") from January 2000 to present; and
    9) Communications to and from the Department of State ("DOS") concerning the processing of H-1B visa applications and the issuance of H-1B visas from January 1, 2000 to present. Eggleston Decl. 4.
[2] USCIS disseminates accurate and useful information regarding immigration issues in addition to granting immigration and citizenship benefits. Def.'s Mot. 3. Additionally, USCIS is the agency responsible for processing H-1B temporary visa petitions and works to ensure the integrity of the U.S. immigration system. *Id.*
[3] The Significant Interest Team reviews incoming FOIA requests and determines their nature and scope. Eggleston Decl. 5. The paralegal assigned to the request identifies any and all Agency offices that might have potentially responsive documents and forwards the request to those offices. *Id.* The offices with responsive

Security and Records Verification Directorate ("NSRV"), the Service Center Operations ("SCOPS"), and the Office of Policy and Strategy ("OPS")—were most likely to have documents responsive to NACCB's request. Eggleston Decl. 5–6.

### 2. The Response to NACCB's FOIA Request

After receiving NACCB's FOIA request, NSRV determined that the Fraud Detection and National Security Office ("FDNS"), a division of USCIS, had responsive documents.[4] *Id.* at 2. When FDNS received NACCB's FOIA request, Charles Pratt—an Immigration Officer and resident expert for employment fraud within FDNS—discussed the request with his supervisors and contacted relevant offices within USCIS and FDNS.[5] *Id.* at 2. Pratt then searched FDNS's shared computer drive and his personal computer drive in addition to examining hard copy files for responsive records. *Id.* Pratt sent all responsive documents back to the NRC on or about May 12, 2009. Eggleston Decl. 6.

When SCOPS received NACCB's FOIA request, adjudications officer April Padilla contacted and subsequently forwarded the FOIA request to four Service Centers located within the Center Fraud Detection Operations because she believed those offices might have responsive records.[6] *Id.* at 3. Additionally, Padilla forwarded the request to Carol Williams—an adjudications officer who worked on H-1B matters—who searched the SCOPS headquarters for any records, including hard copy and electronic materials that might be responsive to the FOIA request. *Id.* A SCOPS employee also suggested that Holt contact USCIS's Office of Field

---

documents send the materials back to the NRC paralegal, who reviews the documents to determine whether any FOIA exemptions apply. *Id.* at 8.

[4] NSRV, at the time of the FOIA request, ensured the security and integrity of the United States immigration system by handling specific functions within it. Eggleston Decl. 5.

[5] The FDNS division of USCIS detects, investigates, apprehends, and deters immigration fraud in conjunction with agencies within the Department of Homeland Security ("DHS") and offices outside of it. Def.'s Mot. 1.

[6] SCOPS—part of USCIS's Domestic Operations Directorate at the time of the FOIA request—ensured that immigration information and benefits were provided to domestic customers in a timely and accurate manner. Eggleston Decl. 5–6.

Operations for materials responsive to NACCB's third category of documents, the Adjudicator's Field Manual ("AFM"). *Id.* Holt subsequently contacted Roger Pitcairn, the point person for all AFM requests, in relation to the FOIA request. *Id.* SCOPS forwarded all responsive documents to NRC on or about May 29, 2009. Eggleston Decl. 6.

When the FOIA request reached OPS, it determined that it did not have responsive materials.[7] *Id.* Additionally, OPS indicated that the FOIA request fell outside its purview and suggested instead that NRC contact FDNS and SCOPS, as those offices were more likely to contain responsive materials. *Id.*

### 3. Processing NACCB's FOIA Request

On March 22, 2010, NACCB's request reached the front of the FOIA queue at the NRC. and Holt began to process the request.[8] Eggleston Decl. 7. After receiving and evaluating material amassed from various agencies and offices, Holt determined that 1,052 pages were responsive to the request. Def.'s Mot. 3. Holt assessed each page to establish: 1) whether a FOIA exemption precluded its disclosure; 2) whether parts of a document could be segregated, consistent with FOIA regulations; and 3) whether a document merited a direct response from a different agency.[9] *Id.*

Holt concluded that 286 pages could be fully released, and 71 pages could be released in part. *Id.* She completed a line-by-line review of each of the remaining 621 pages, concluding that they could not be disclosed or reasonably segregated. *Id.* at 3–4. Finally, Holt determined

---

[7] OPS, a headquarters program at USCIS, makes policy recommendations and performs policy research and analysis regarding immigration service issues in addition to coordinating immigration policy issues with DHS headquarters. Eggleston Decl. 5.

[8] FOIA requests are handled in the order they are received and are placed into one of two tracks indicating whether the request is simple or complex. Eggleston Decl. 2. Complex requests involve collaboration across agencies and/or offices. *Id.*

[9] Agencies commonly refer documents to another agency for a "direct response" if the receiving agency concludes that another agency should bear the responsibility of determining whether requested material is exempt under FOIA. 6 C.F.R. § 5.4(c)(1) (2010).

that 74 pages merited the direct response of the DHS Office of Inspector General ("OIG"). Def.'s Mot. 4. By a letter dated March 24, 2010, USCIS referred those 74 pages to OIG for a direct response. Eggleston Decl. 8. After concluding that OIG should not directly respond to the request concerning these 74 pages, NRC directed FDNS to search for the document. *Id.* at 9. FDNS's search ultimately proved unsuccessful, and it directed NACCB—via a letter dated June 23, 2010—to a website where the final version of the document was publicly available, in addition to releasing six other pages that had been originally withheld. *Id.*

By a letter dated March 30, 2010, USCIS disclosed 357 pages of responsive, non-exempt documents to NACCB. *Id.* at 4. USCIS withheld a number of documents pursuant to FOIA exemptions 2, 5, 6, and 7(e).[10, 11] Def.'s Mot. 5; USCIS Letter to Mark B. Roberts, Def.'s Mot. Summ. J. 26, ECF No. 16-1 (Incorporated as Exhibit D) ("USCIS Response"). USCIS included instructions detailing the procedure for an administrative appeal if NACCB did not agree with its assessment of the FOIA request. USCIS Response 2. USCIS also informed NACCB that it was unable to locate documents related to categories 8 and 9 of the request, but that it would continue to search for responsive records. Eggleston Decl. 8. USCIS advised NACCB that if new responsive records were located, it would send them via a separate letter. *Id.*

On March 31, 2010, SCOPS located an additional set of records, responsive to category 8 of NACCB's request, which it sent to NRC for evaluation.[12] *Id.* at 6. Holt followed the same

---

[10] The Court declines to address NACCB"S FOIA Exemption 2 argument, as defendant acknowledges that it will not withhold documents 14, 24, 28, 29, 30, and 32 in their entirety and portions of documents 25, 26, and 31 pursuant to the recent Supreme Court decision in *Milner v. Dep't of the Navy*. 131 S. Ct. 1259 (2011) (holding that Exemption 2 does not shield material on the ground that its "disclosure would significantly risk circumvention of federal agency functions").

[11] Additionally, the Court will not address NACCB's FOIA Exemption 6 argument because NACCB does not challenge the redactions of personnel information. Pl.'s Cross-Mot. Summ. J. 5, July 26, 2010, ECF No. 18 ("Pl.'s Cross-Mot.").

[12] SCOPS informed NRC that it was unable to find responsive documents that corresponded to category 9 of NACCB's FOIA request. Eggleston Decl. 8. SCOPS also assigned a new control number—NRC2010019940—to the documents responsive to category 8 of the request. *Id.*

6

process laid out above, concluding that 48 pages were responsive to NACCB's request and that 42 pages merited a direct response from the Department of Labor ("DOL"). *Id.*; Eggleston Decl. 8. DOL determined that the 42 pages could be released. Eight of the 42 pages, however, contained redactions pursuant to FOIA Exemptions 5 and 7(e). Decl. Brian Pasternak 2, Exhibit 2 Def.'s Mot. Summ. J. June 24, 2010, ECF No. 16-2 ("Pasternak Decl."). [13] Holt subsequently evaluated the six remaining pages, concluding that two pages could be released in full while three pages could be released in part. *Id.* Holt only withheld one page, determining that the page could not be reasonably segregated. *Id.* The NRC released the non-exempt pages by a letter dated April 5, 2010.

### B. Procedural History

NACCB filed this lawsuit on March 4, 2010, alleging that USCIS failed to respond to its FOIA request submitted on April 15, 2009. USCIS subsequently moved for summary judgment on June 24, 2010. USCIS's motion for summary judgment centers around two arguments: 1) that it conducted a reasonable search for documents and disclosed documents that were not exempt under FOIA and 2) that it properly withheld documents pursuant to FOIA Exemptions 5 and 7(e). In response, NACCB cross-moved for summary judgment. Pl.'s Cross-Mot. 2. Having fully reviewed the record and the parties' evidence, the Court now turns to the merits of the motions.

## III. LEGAL STANDARD

Summary judgment should be granted when the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations,

---

[13] NACCB does not dispute DOL's findings in relation to the 42 pages that were directly referred to the agency. DOL released all 42 pages, making minor redactions on eight pages pursuant to Exemption 5 and withholding one page pursuant to Exemption 7(a). Decl. Brian Pasternak 1, Ex. 2 Def.'s Mot. Summ. J., June 24, 2010, ECF No. 16-2 ("Decl. Pasternak"). The Court finds that DOL properly redacted the nine pages in dispute pursuant to FOIA exemptions 5 and 7(a) respectively.

. . . admissions, interrogatory answers, or other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c). This standard requires more than the mere existence of *some* factual dispute between the parties; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). "An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Doe v. IRS*, 706 F. Supp. 2d 1, 5 (D.D.C. 2009) (citing *Anderson*, 477 U.S. at 248).

This Court reviews a motion for summary judgment arising from an agency's decision to withhold or disclose documents under FOIA *de novo*. *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). The agency must demonstrate that it "conducted a search reasonably calculated to uncover all relevant documents" and that any withheld material falls within a statutory exemption. *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The agency must prove that information was not withheld due to bad faith. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). FOIA exemptions must be "narrowly construed," *FBI v. Abramson*, 456 U.S. 615, 630 (1982), and if records are improperly withheld, the Court may order their production. 5 U.S.C. § 552(a)(4)(B).

## IV. ANALYSIS

### A. Reasonableness and Adequacy of USCIS's Search

The adequacy of an agency's search is governed by principles of "reasonableness." *Oglesby*, 920 F.2d at 68. NACCB contends that USCIS's search was unreasonable because 1) USCIS failed to timely respond to its request; 2) the search USCIS conducted was inadequate

and unreasonable; and 3) USCIS failed to notify it of the use of a search cut-off date.[14] As explained below, the timeliness of USCIS's response is irrelevant and its actual search was reasonable.

As an initial matter, although NACCB bemoans USCIS's search procedure (or lack thereof), USCIS's delayed response in searching for responsive materials will not affect this summary judgment motion. As this Court has previously noted:

> A lack of timeliness does not preclude summary judgment for an agency in a FOIA case. The only question for summary judgment is whether the agency finally conducted a reasonable search, and whether its withholdings are justified. When exactly a reasonable search was conducted is irrelevant. *See, e.g.*, *Atkins v. DOJ*, 1991 U.S. App. LEXIS 22309 (D.C. Cir. Sept. 18, 1991) (unpub.) ("The question whether DEA complied with the FOIA time limitations in responding to Aaron Atkins' request is moot because DEA has now responded to this motion.").

*Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59, 2003 WL 21715677 at *2 (D.D.C. 2003). Thus, USCIS's delayed response to NACCB's request will not factor into the Court's decision regarding the adequacy and reasonableness of USCIS's search.

A court evaluating whether an agency conducted a reasonable search focuses its inquiry on "whether the search for those documents was adequate," and not on the possibility that other responsive documents exist. *Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 294 (D.C. Cir. 2005). To prove that a requested document falls within a statutory exemption, an agency may submit "affidavits or declarations that describe the withheld material in reasonable detail and explain why it falls within the claimed FOIA exemptions." *Judicial Watch v. United States Postal Serv.*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004). Additionally, agencies may provide a *Vaughn* index—

---

[14] A search cut-off date refers to the date that an agency begins its search for responsive documents. Agencies typically do not wait until a document is "due for processing" to search for documents; rather, agencies use the date the search commenced, per agency policy. Supp. Eggleston 3. This practice ensures "that, to the maximum extent possible, responsive documents are searched for, located, transmitted to the NRC and available to the NRC for processing when the request comes up the queue for processing." Supp. Eggleston 2. Following this policy, FDNS and SCOPS completed their searches for responsive material in April and May 2009, respectively. *Id.* at 3.

which is an itemized index correlating a FOIA exemption and the relevant nondisclosure justification to the withheld document—to prove that a claimed FOIA exemption applies to a certain document. *Carter, Fullerton & Hayes, LLC v. Fed. Trade Comm'n*, 637 F. Supp. 2d 1, 5–6. The burden rests with the government to "establish their right to withhold information from the public and they must supply the courts with sufficient information to allow us to make a reasoned determination that they were correct." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980).

USCIS submitted a detailed *Vaughn* Index that explained the reasons for withholding fifty-three documents pursuant to several FOIA exemptions. Vaughn Index 1–32, Ex. A to Def.'s Mot. Summ. J., June 24, 2010, ECF No. 16-1 ("Vaughn Index"). As Eggleston explains in her declaration, employees searched their own personal records in addition to locating and identifying other agency offices that could have potentially responsive materials. Eggleston Decl. 5. NRC's search for responsive material unearthed 1,052 pages of responsive documents and, given that the standard for assessing the reasonableness of an agency's search does not hinge on the agency's ability to locate every responsive file, NACCB's arguments are unpersuasive. *Wilbur v. CIA*, 335 F.3d 657, 678 (D.C. Cir. 2004). Since the standard for assessing the reasonableness of a FOIA search is determined by assessing the search as a whole, NRC's inability to locate one document—when it conducted a supplemental search to find it— does not render its search efforts inadequate.[15] Eggleston Decl. 8; *see also Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986) (clarifying that "it would be unreasonable to expect even

---

[15] NACCB disputes USCIS's withholding of documents numbered 1, 2, and 19, alleging that these are publicly available documents. Pl.'s Cross-Mot. 10. Notwithstanding the fact that these documents were properly withheld in accordance with FOIA exemption 7(e), *see infra* IV C, they were never "officially released" by USCIS. A document is considered "officially released" when the information requested: 1) is as specific as the information previously released; 2) matches the information previously disclosed; and 3) is already public knowledge via an official and documented disclosure. *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983). Here, none of the specified documents meet this exacting standard, as there are "substantive differences" between the documents and previously disclosed information. Supp. Eggleston 3. Thus, NACCB's argument is unpersuasive.

the most exhaustive search to uncover every responsive file"). Considering the breadth of NACCB's FOIA request, USCIS conducted a good faith search for responsive documents that was reasonably calculated to uncover responsive documents.

When determining if the use of a search cut-off date was reasonable, this Circuit has held that an "agency bears the burden of establishing that any limitations on the search it undertakes in a particular case comport with its obligation to conduct a reasonably thorough investigation." *McGehee v. C.I.A.*, 697 F.2d 1095, 1101 (D.C. Cir. 1983). While "conclud[ing] that neither the terms of the statute nor the case law interpreting them supports a claim that the use of a time-of-request cut-off date is always proper," the D.C. Circuit cautioned that courts should look to the facts of a case to evaluate the reasonableness of an agency's conduct. *In Defense of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 99 (D.D.C. 2008) (quoting *McGehee*, 697 F.2d at 1102)).

In this instance, USCIS failed to notify NACCB of its search cut-off policy. Indeed, nothing in USCIS's response to NACCB's FOIA request mentions a search cut-off date or the date USCIS used to process the request. USCIS Response 1–3. Furthermore, while USCIS argues that its acknowledgement letter directed NACCB's attention to 6 C.F.R. § 5, the letter only directed NACCB's attention to 6 C.F.R. § 5.3, which describes the payment process for FOIA requests. *Id.* at 2. For these reasons, NACCB argues that the court should require USCIS to supplement its search because NACCB "did not have notice as to the cut-off date, either by letter to . . . [NACCB] or by agency regulation." Pl.'s Cross-Mot. 13. The Court disagrees.

Although USCIS failed to specifically notify NACCB of its search cut-off date policy, the facts of this case support USCIS's contention that it conducted an adequate search. As in *Defense of Animals*, USCIS searched for records shortly after receiving the FOIA request, but it

delayed sending responsive material to NACCB for eleven months. 543 F. Supp. 2d at 99. The Court in *Defense of Animals* explained that the defendants' explanation of their use of a search cut-off policy failed as they did not attempt "to sustain their burden of demonstrating the reasonableness of this cut-off date other than relying on unspecified agency policy." *Id.* Although USCIS also relies on agency policy for support, it conducted supplemental searches when it realized that its search did not include records pertaining to several categories of NACCB's request. Eggleston Decl. 8. Additionally, USCIS searched various agencies for missing materials and assigned a new control number to those documents. *Id.* Furthermore, USCIS did not use the date of the FOIA request as its search cut-off date, rather it used a later date, resulting in a "much fuller search and disclosure" for NACCB. *McGehee*, 697 F.2d at 1104. While in the future USCIS would be wise to expressly acknowledge the use of a search cut-off date policy in its response to FOIA requests, its failure to do so in this case does not render its search efforts unreasonable.

  **B.**  **Exemption 5**

Under FOIA Exemption 5, the agency is not required to disclose documents that reveal "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts interpreting Exemption 5 have "construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including "materials which would be protected under the attorney-client privilege, the attorney-work privilege, or the executive 'deliberative process privilege.'" *Taxation with Representation Fund. v. Internal Revenue Serv.*, 646 F.2d 666, 676 (D.C. Cir. 1981) (quoting *Carter, Fullerton, & Hayes, LLC v. Fed. Trade Comm'n*, 637 F. Supp. 2d 1, 10 (D.D.C. 2009)).

NACCB asserts that USCIS failed to disclose documents under FOIA Exemption 5 pursuant to the deliberative process privilege and the attorney-client privilege.

Agencies frequently rely upon the deliberative process privilege when invoking Exemption 5, a privilege that operates "to prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975). This privilege allows an agency to withhold "all papers which reflect the agency's group thinking in the process of working out its policy and determining which its law shall be." *Id.* The deliberative process privilege

> serves to assure that subordinates within an agency will feel free to provide the decision-maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States*, 617 F.2d at 866. The following classes of documents are exempt under the deliberative process privilege: "1) federal official's notes, reports and other mental impressions, 2) work plans, status reports, briefings, opinion papers and proposals, 3) draft documents, 4) construction cost estimates, 5) attorney-client privilege, and 6) factual materials that were compiled for a specific pending procedure and an essential part of a specific policy-making process." *Hornbostel v. U.S. DOI*, 305 F. Supp. 2d 21, 30–31 (D.D.C. 2003).

An agency seeking to withhold or redact a document pursuant to the deliberative process privilege must prove that the withheld or redacted document is both pre-decisional and deliberative. *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). A document is deemed pre-decisional "if it was prepared in order to assist an agency decision-maker in arriving at his decision, rather than to support a decision already made." *Judicial Watch v. Rossotti*, 306 F. Supp. 2d 58, 69 (D.D.C. 2004). A deliberative document must reflect "the give-and-take of

the consultative process" and the inquiry "focuses on whether disclosure of the requested material would tend to discourage candid discussion within an agency." *Id.* As explained below, USCIS properly applied FOIA Exemption 5 to all of the disputed documents because the description of each document is sufficiently detailed for this Court to determine why the deliberative process privilege applies to the document.[16]

### 1. Applying the Pre-Decisional Standard to Draft Documents

As an initial matter, NACCB disputes the classification of several documents as "pre-decisional," arguing that USCIS failed to match the document with the corresponding final document. Pl.'s Cross-Mot. 17. An agency does not need to identify the policy or act that spurred the creation of a particular draft document. *See NLRB*, 421 U.S. at 151 n.18 (explaining that "agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process"); *see also Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011) (holding that "even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of the decision-making process").

NACCB specifically challenges the withholding of documents numbered 17, 21, and 22, which consist of e-mail exchanges between various agency officials regarding the possible implementation of changes to processing fraud matters involving H-1B visas. While these recommendations do not identify a specific agency decision, they reflect on-going discussions and debate regarding a change to current processing. If the Court were to order the release of

---

[16] The parties dispute the applicability of the deliberative process privilege to documents numbered 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 17, 21, 22, and 23 as well as documents numbered 35, 37, 41, 42, 44, 46, 52, and 53 on the *Vaughn* Index. (The second list of documents corresponds to documents referred to the DOL for review.)

14

this commentary, it would stymie the consultative process because employees might hesitate to express their opinions for fear of public disclosure. Since Exemption 5 expressly protects the deliberative process, USCIS properly withheld these documents in their entirety.

### 2. Draft Documents are Exempt under FOIA Exemption 5

This Circuit has held that "draft documents likely are to be protected under the deliberative process privilege because 'draft documents,' by their very nature, are typically pre-decisional and deliberative.'" *Radiation Sterilizers, Inc. v. U.S. Dep't of Energy*, 1991 U.S. Dist. LEXIS 4669, *10 (D.D.C. Apr. 9, 1991) (quoting *Exxon v. DOE*, 585 F. Supp. 690, 698 (D.D.C. 1983)). Courts discourage disclosing rejected drafts since "such documents, if released, may actually mislead the public as to the policy of the agency." *Pies v. IRS*, 668 F.2d 1350, 1535 (D.C. Cir. 1981). Mere classification of a document as a "draft document" does not end the inquiry; the government must also prove that the document is pre-decisional and related to the deliberative process. *Coastal States Gas*, 617 F.2d at 866.

The majority of the disputed documents are classified as "draft documents." The parties specifically dispute document number 15, which was prepared in 2007 and withheld in its entirety. Vaughn 10. Document 15 is pre-decisional because it relates to a final agency decision, as it is a draft of the Office of the Inspector General's review of the Benefit Fraud Referral Process. *Id.* OIG did not release this document until April 2008, and the *Vaughn* Index indicates that the document contains pre-decisional commentary. *Id.* Document 15 was also a part of the deliberative process because it was modified prior to its final release in April 2008. *Id.* Releasing this document would provide the public with conflicting information, and thus

15

USCIS properly withheld it in its entirety. For the same reasons, USCIS properly withheld draft documents numbered 5, 6, 7, and 8. Vaughn 3–6.[17]

### 3. Advisory Opinions Are Exempt Under FOIA Exemption 5

Documents that are specifically protected by the deliberative process privilege include "advisory opinions, recommendations and deliberations, comprising part of a process by which governmental decisions and policies are formulated." *NLRB*, 421 U.S. at 150. Thus, documents that reflect personal opinions or provide advice cannot be disclosed under FOIA Exemption 5. *Exxon*, 585 F. Supp. at 698; *see also Mead*, 566 F.2d at 256 (explaining that even a discussion regarding implementation of a policy is exempt under FOIA Exemption 5).

USCIS properly withheld documents 9–13, 23, 35, 37, 41, 42, 44, 46, 52, and 53 in their entirety pursuant to Exemption 5. Vaughn 6–9, 15, 23–31. Documents 9–12, which consist of "intra-agency" memoranda regarding H-1B Anti-Fraud Initiatives, are pre-decisional and deliberative because they contain advisory opinions and seek guidance regarding process and policy changes that should be undertaken as a result of the BFCA report. *Id.* at 6–9. Similarly, documents 13 and 23 were withheld because they contained the opinions and recommendations of various agency officials regarding legal and policy matters related to the processing of H-1B visa petitions. *Id.* at 9, 15. The final seven documents contain e-mail communications between USCIS and DOL employees regarding the implementation of different policies at the agency. *Id.* at 23–31.

The Court declines to grant NACCB access to any of these documents because they are all pre-decisional and deliberative, qualifying for protection under the deliberative process privilege. Because all of these documents provided advisory opinions and recommendations, the

---

[17] Because the Court finds that document 7 is a draft document, it declines to address the applicability of the attorney-client privilege to this document.

release of which could hinder the deliberative process and confuse the public, this Court finds that USCIS properly withheld the documents in their entirety pursuant to FOIA Exemption 5.[18]

## C. Exemption 7(e)

Under FOIA Exemption 7(e), an agency is not required to disclose "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(e). The D.C. Circuit has held that an agency may withhold information from disclosure where releasing such information would provide insight into its investigatory or procedural techniques. *See Morley v. CIA*, 508 F.3d 1108, 1129 (D.C. Cir. 2007); *see also Piper v. Dep't of Justice*, 294 F. Supp. 2d 16, 30 (D.D.C. 2003) (explaining that an agency could properly withhold polygraph test information because its disclosure "has the potential to allow a cunning criminal to extrapolate a pattern or method to the FBI's questioning technique").

NACCB disputes USCIS's withholding of documents related to "requests for evidence" in response to a benefits application or petition pursuant to FOIA Exemption 7(e).[19] This Court finds that USCIS properly withheld all of these documents. Since USCIS collaborates with other agencies within and outside of DHS to prevent immigration fraud, disclosing any of the aforementioned documents would reveal the selection criteria, fraud indicators, and investigative process that USCIS and other agencies use in fraud investigations during the H-1B visa process. Releasing this information would potentially enable the circumvention of law and could create

---

[18] Because this Court finds that document 12 is properly withheld pursuant to the deliberative process privilege, the Court declines to address the applicability of the attorney-client privilege.
[19] The documents in question are documents numbered 1, 2, 16, 18, 19, 20, and 27.

national and homeland security problems, which Exemption 7(e) expressly prohibits. Thus, USCIS properly applied FOIA exemption 7(e) to the six documents in question.

## V.     CONCLUSION

For these reasons, this Court grants defendants' motion for summary judgment and denies plaintiff's cross-motion for summary judgment.

A separate Order and Judgment memorializing this Opinion will issue this day.

Signed by Royce C. Lamberth, Chief Judge, on August 17, 2011.